FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

OCT 06 2010

JAMES N. HATTEN, CLERK
By: _____ Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

**Tracy R. Mitchell**

**CIVIL ACTION**
**FILE NUMBER:**

**1:10.CV-3196**

### PLAINTIFF

**VS.**

**Washington Mutual**
**Mortgage Electronic Registration System, Inc**
**Shapiro & Swertfeger, LLP**
**Federal National Mortgage Association**
**EverHome Mortgage Company**
**Chase Home Finance**

## DEFENDANTS

## COMPLAINT FOR PERMANENT INJUNCTION FOR
## CEASE AND DESIST AND OTHER EQUITABLE RELIEF

COMES NOW, the Plaintiff Tracy R. Mitchell in the above styled matter and files

this Civil Complaint, Lawsuit and Permanent Injunction for cease and desist any all

further duties / actions of said appointment(s), or assignment(s) including debt collection

and any foreclosure actions and other equitable relief.

## INTRODUCTION AND FACTS

On August 20, 2004, Tracy R. Mitchell the Plaintiff obtained and secured a loan

from Washington Mutual Bank, F.A. in the amount of Two Hundred Fourteen

Thousand and 00/100 Dollars (U.S. $214,000.00)

Herein referred to as lender.

The loan was for the purchase of a home located at 446 Glenwood Place, Atlanta Georgia 30316

The social security number associated with this loan is 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

This is a Predatory Loan. I, Tracy R. Mitchell was tricked into this Loan. "Predatory Loans are" A scheme designed to trick low income people into loans that they cannot afford, nor can they afford to pay back.

This loan is part of a pool of securities that have been sold for investment on Wall Street. (Loan was sold prior to signing of closing documents.)

All closing documents were not given to the Plaintiff before closing for his viewing as per TILA ACT 15 U.C.S 1601 ET Regulation Z EARLY DISCLOSURE STATEMENTS were not provided to consumer.  Special Information Booklets containing consumer information were omitted.  The Controlled Business Arrangement (CBA) Disclosure which is required was not given to the consumer as Required 12 U.S.C 2607 © (4).

This Loan has been transferred to Chase Home Finance without notice to Tracy R. Mitchell as required by RESPA.  A "Qualified Written Request" was given to the servicer and more than 20 days was passed with no response from the servicer as required.  (See Exhibit "B") Rescission Letter and Return Receipt.

At no time were closing documents given to Tracy R. Mitchell prior to closing of the Loan.  As per the TILA ACT.

2

## ALLEGATIONS, VIOLATIONS, CLAIMS AND FRAUD

When MERS assigned the Note to Chase Home Finance, the Note

became unsecured and the Deed of Trust became worthless.

The use of MERS to make ownership of the Note and mortgage easier to trace also

made the Deed of Trust unenforceable.

Chase Home Finance has no interest in the property, because the

Deed of Trust that got from MERS could not be foreclosed.  The Law states the

right to foreclose goes away when the promissory Note is "split" from the Deed of

Trust that it is suppose to secure.  The Note that Tracy R. Mitchell was given did

not mention MERS, so MERS had no right to assign the Note to Chase Home

Finance

The assignment that MERS made to Chase Home Finance conveyed only

the Deed of Trust, splitting it from the Note.

The "Lender" Washington Mutual Bank, F.A. is not in possession of the

Original Promissory Note which is necessary for a foreclosure.

The loan was assigned to Mortgage Electronic Registration Systems (MERS)

Who does not hold any interest in the loan?  It has not received any consideration,

therefore is not authorized as assignee or beneficiary on this loan.

Chase Home Finance has yet to prove its interest in the property.

When MERS assigned the Note to Chase Home Finance the Note

became unsecured and Deed of Trust became worthless.

MERS is name as nominee as beneficiary.  MERS is NOT named on the Note.  If the

Note is split from the security instrument, there is NO enforcement mechanism

available under the Deed of Trust. "Once the Deed of Trust and Note are split there is NO way to get them back together.

In order to prove a claim under the Note or to verify the Debt, Chase Home Finance must explain how it acquired any rights under the Note and whether it is acting in its own rights or as an agent for another.

The Deed of Trust did not name Chase Home Finance as the beneficiary, but instead names "MERS" Mortgage Electronic Registration System solely as nominee.

The promissory note does not make reference to MERS. The Note and Deed of Trust both require payment to be made to the "Lender" not MERS.

A party "must have some actual, justiciable interest." Id. They must have recognizable stake. Wahl v Braun, 980 S.W. 2d 322 (Mo. App. E.D. 1998). Lacking standing cannot not be waived and may be considered by the court *sua sponte*. Brock v City of St. Louis, 724 S.W. 2d 721 (Mo. App. E.D. 1987). If a party seeking relief standing the trial court does not have jurisdiction to grant the request relief. Shannon, 21 S.W. 3d at 842.

 The loan was assigned to Mortgage Electronic Registration Systems (MERS) Who does not hold any interest in the loan. It has not received any consideration, therefore is not authorized as assignee or beneficiary on this loan

The record reflects that Chase Home Finance There is NO evidence in the record or the pleadings that MERS held the promissory note or that Chase Home Finance the authority to transfer the promissory note.

MERS could not transfer the promissory note therefore the language in the assignment of the Deed of Trust purporting to transfer the promissory note is

ineffective. *Black v. Adrian, 80 S.W. 3d 909, 914-15 (Mo. App. S.D.2002)*

"Assignee of a Deed of Trust or a promissory note is vested with all interests, rights and powers possessed by the assignor in the mortgage property"

MERS never held the promissory note, thus its assignment of the Deed of Trust to Chase Home Finance separate from the Note had NO force.

*See George, 76 S.W. 2d at 371. St. Louis Mutual Life Ins. Co., 46 S.W.2d at 170*

Chase Home Finance lacked a legally cognized interest in the property and therefore has no standing.

The Plaintiff intends to file affirmative defense for set violations to the TRUTH –IN-

LENDING ACT, and a counterclaim for damages for RICO, TILA violations, usury, fraud in the inducement and fraud in the execution, and malicious abuse of the process among other causes of action.

This loan should be rescinded as per TILA 15 U.S.C. (b); Reg Z 226.15 (d) (1), 226.23(d) (1). 226.15 and 226.23 Predatory Lending Practice 15 U.S.C. 1602(a) (1) (A); Reg Z 226.32(a) (I).

## Georgia Assignment and Satisfaction of Mortgage Law

Assignments: Lenders, or holders of mortgages or deeds of trust, often assign mortgages or deeds of trust to other lenders, or third parties.  When this is done the assignee steps into the place of the original lender or assignor.  To effectuate an assignment, the rule is that the assignment must be in proper written format and recorder to provide notice of the assignment.

## Georgia Law

**Execution of Assignment or Satisfaction: Must be signed by the mortgagee.**

**Assignment: An assignment must be in writing and recorder.**

MERS is not registered with the Georgia Division of Corporation and therefore may not

transact business in the State of Georgia. A Foreign corporation may not transact

business in this state until its application for authority to transact business is filled by the

division.

**(Fifth Judicial District Court In and For Washington County, State Of Utah)**

I Tracy R. Mitchell have asked that the Note Holder show proof of all of the closing

papers by Original Promissory note as to who the real holder in due Course is …. Please

see United States District Court Case for the Northern District of Ohio Case No. CV2282

## DEFENDANTS

Chase Home Finance is a business that services millions of home annually. Chase

Home Finance has operated as a common enterprise while engaging in the unlawful acts

and practices alleged below. Because Chase Home Finance has operated as a common

enterprise they are jointly and severally liable for the acts and practices alleged below.

## DEFENDANT I

Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC., is a

Delaware corporation, and has done business and is doing business in the State, with its

principle place of business in Reston, Virginia.

Recently in a Tennessee Superior Court rulings; held that MERS is not the holder in

due course (real party in interest) of any property and never was. This can have

6

devastating repercussion for the mortgage industry, not just MERS because there is no valid chain of title. People who are being foreclosure upon, or have foreclosure upon now have an equitable remedy.

These people should now be able to win in court and have their mortgage nightmare settled. Some people are able to keep their homes, as banks fear losing far more in class action suits. Getting in on the action and suing MERS for filing false records in every county and state since MERS began over 10 years ago. Carrying possible fine of $5 – $10k a pop, this could amount to millions and possible billions of dollars in penalties against MERS. This money that Tracy R. Mitchell desperately need. This could mean that anyone with a mortgage may have it immediately settled and the true owner get the title free and clear due to fraud, which has no statue of limitation. Lawful owners will have recourse to sue for fraudulent foreclosure

Chase Home Finance and Washington Mutual Bank, F.A. with full knowledge and or reckless disregard, and or willful ignorance, made false representations in order to avoid payment in full for all fess for recordation of documents reflecting the establishment and or transfer of secured interests in real property in the State, and further failed to record documents with the intent of avoiding payments to the County.

Chase Home Finance and Washington Mutual Bank, F.A. adopted the Mortgage Electronic Registration Systems (MERS) to deprive country and state government of revenue used among other things to maintain county real property records, fund the judiciary, fund school systems and provided other government services. But for the recordation of false statement, Chase Home Finance and Washington Mutual Bank, F.A. would have paid additional recording fees to the Counties

MERS is named in millions of recorded documents in the counties in the State. Chase Home Finance and Washington Mutual Bank, F.A. recorded or caused to be recorded deeds of trust / mortgage and other documents which identified MERS as the beneficiary, "which is not, or the nominee of the lender" and "lender's successors and assigns," which MERS never was and as holding "legal title" when the legal title rested with the Trustee in this State which uses a deed of trust to secure a mortgage; thereby, Chase Home Finance and Washington Mutual Bank, F.A. falsely named, appointed and or characterized MERS in any of the afore-name capacities in numerous documents recorded throughout the counties of the State over the last ten (10) years.

Chase Home Finance and Washington Mutual Bank, F.A. made these characterizations for MERS despite the fact that MERS never had and has no employees, and instead purported to act since the inception of MERS, through alleged authorization certifying officers and signatories who were never authorized to act by any lawful official act or corporate resolution of MERS or to act in any MERS representative capacity whatsoever. Further, such alleged signatories or certifying officers were not and are not authorization by any applicable law to take any action on behalf of MERS with regard to any documents recorded in the State bearing MERS' name or on MERS' behalf.

Additionally, these documents affected the interests in real estate and, if recorded, were required to be recorded truthfully so as to maintain the veracity and sanctity of the land records and to allow the general public to rely on the truth of any document filed therein.

Despite millions of deed of trust that were executed with promissory notes which notes were then transferred of various MBS that were not members of MERS, Chase

8

Home Finance and Washington Mutual Bank, F.A. with reckless disregard, and or willful ignorance, failed to record the document described in this Amended Complaint and other documents. Tracy R. Mitchell now brings this action under Georgia law against Chase Home Finance and Washington Mutual Bank, F.A. for violations of these sections.

As of September, 2009, MERS had been named as the mortgagee or beneficiary on approximately 62 million mortgages and deeds of trust in United States by MERS members.

Chase Home Finance and Washington Mutual Bank, F.A. acted in concert in violation of Georgia Government Code, so as to commit the acts herein alleged and are each liable for the violations of the False Claims Act.

Chase Home Finance and Washington Mutual Bank, F.A. obtained monies from Tracy R. Mitchell mortgage in each County of this State, pursuant to settlement statements which indicated recording fees were due and owing, which reflected Chase Home Finance and Washington Mutual Bank, F.A. knowledge that such recording were required by law but which documents Chase Home Finance and Washington Mutual Bank, F.A. thereafter failed to record.

Additionally, these documents affected the interests in real estate and were therefore to be recorded pursuant to Georgia Government Code and in order to proceed falsely under the provision of GA Civil Code and other provisions of Georgia law. Thus, Chase Home Finance and Washington Mutual Bank, F.A. recorded documents that did not reflect and do not reflect the true nature of the security instruments in the land recording system throughout the State.

9

While recording deeds of trust, mortgages, or any other security instruments and / or assignment Chase Home Finance and Washington Mutual Bank, F.A. availed themselves of protection from subsequent purchasers and lien holders as provided by the Georgia recording statues. When recording such interests Chase Home Finance and Washington Mutual Bank, F.A. were obliged to record only truthful documents pursuant to the laws of the State.

Chase Home Finance and Washington Mutual Bank, F.A. contractual and agency relationship with MERS also required as does Georgia law, that additional documents be truthfully recorded if there was a transfer of an interest in real property, i.e. the status of the loans and /or documents changed to a non MERS Member. Specifically, MERS policies and promises with their members oblige them to record and pay for recordation of documents reflecting the establishment and or transfer of secured interests in real property, or beneficial interest in the underlying promissory notes, when a MERS member acquires an interest in any debt evidenced by a security instrument.

Chase Home Finance and Washington Mutual Bank, F.A. failed to record or cause to be recorded any such documents of a non MERS member interest in the applicable loan and security instrument with the intent of avoiding payments to the Counties of this State. Specifically, all securitized mortgage trusts created by Chase Home Finance and Washington Mutual Bank, F.A. was never member of MERS but yet allegedly bought ownership interest in the applicable loans.

Based on the false representations, the recorded documents in the land records do not reflect the true beneficial ownership of the loans in question or accurately represent the ownership of the security instruments securing the loans/notes. Thus, Chase Home

10

Finance and Washington Mutual Bank, F.A. own contractual relationship
with MERS and with the residential mortgage backed securitization trusts which
Chase Home Finance and Washington Mutual Bank, F.A. represent were also violates
and not complied with as promised. Specifically, the applicable disclosures to investors
of those securitization certificates obliged Chase Home Finance and Washington Mutual
Bank, F.A. to truthfully record deeds of trust, mortgages, deed of trust/mortgage
assignments, and other documents evidencing the non-MERS members investors interest
in real property, and in an event of default other foreclosure related documents recorded
in the counties of the State.

But for the initial recordation of false statements and documents, which false
documents also then created an obligation to record other curing / corrective documents
Chase Home Finance and Washington Mutual Bank, F.A. would have paid additional
recording fees to county recording offices that would have been used for the benefit of all
residents of the counties and the State.

Using those false statements, Chase Home Finance and Washington Mutual Bank, F.A.
failed to satisfy their own contractual obligations violated the sanctity of the land records
and used those misleading documents to induce securitization and certificate investors to
purchase residential mortgage backed securities issued from mortgage securitization
pools that Chase Home Finance and Washington Mutual Bank, F.A. financial institutions
created, aggregated, sponsored, underwrote, and sold in the securities markets around the
world. All the time that these acts were occurring, Chase Home Finance and Washington
Mutual Bank, F.A. failed to record any real estate interests of those securitizing trusts in
the land records of the state; thereby, not paying the necessary recording fees in the

11

applicable land recording offices.

But for the false assertions and claims in the recorded document, MERS and Chase Home Finance and Washington Mutual Bank, F.A. would have recorded documents and paid county governments fees that accurately reflected the status of the respective loans and documents.

Falsely recording MERS as the beneficiary on their deeds of trust created an oversimplified, illusory, and false chain of title that purported to justify payment of less money in recording fee; depriving the counties and the State from those fees and directly contributed to the financial deficits that the State of Georgia and its counties are currently experiencing.

Further, in an event of foreclosure and in order to proceed under Georgia Government Code, Chase Home Finance and Washington Mutual Bank, F.A. continued to record false and misleading documents to avail themselves of the privilege of the non-judicial foreclosure statues and falsely asserted that MERS was authorized, as a false "nominee of lender or beneficiary of lender," to record documents enabling Chase Home Finance and Washington Mutual Bank, F.A. to continue perpetrating the fiction in the recorded documents by filing additional documents purporting to designate substitute beneficiaries and appoint substitute trustee to commence foreclosure proceedings.

When a promissory note secured by a MERS deed of trust/mortgage was assigned backed security entity (MBS), a securitized mortgage investor pool, mortgage loan pool, special purpose vehicle (SPV), or other real estate mortgage investment conduit (REMIC), pursuant to MERS own rules and membership agreements the agency authority, if any and the relationship of MERS and all of its members of the promissory note and deed of

12

trust/mortgage was extinguished, and a truthful recording should have been made to accurately reflect the change of status with respect to the loans.

The MERS membership agreement obliged Chase Home Finance and Washington Mutual Bank, F.A. to make two separate recordings in the event of a transfer to a mortgage backed security pool or trust (MBS, SPV, or REMIC) outside the MERS system:

1. an assignment of beneficial interest and
2. a designation of substitute trustee or beneficiary.

Immediately upon every such assignment to a securitized mortgage pool trust, the assignment of the Note and / or Deed of Trust to a new beneficiary was required to be recorded in the County where the real estate was located. MERS and Chase Home Finance failed to make such recording or pay the required fees.

Despite millions of deeds of trust in the State of Georgia being executed with promissory notes, which notes were then allegedly transferred to various MBS, SPV or REMICs that were non MERS Members, Chase Home Finance and Washington Mutual Bank, F.A. intentionally failed to record the documents described above and other documents, so as to reflect the non-MERS Members interest in the loans and the land records

As of September 2009, MERS had been named as the mortgage or beneficiary on approximately 62 million mortgages and deed of trust in the United States.

Chase Home Finance and Washington Mutual Bank, F.A. violated the False Claim Act by taking such actions as preparing and recording documents which incorrectly and untruthfully designate MERS as a beneficiary or nominee of lender, including but not limited to:

13

1. Deeds of trust
2. Notices of Substitute trustee
3. Notices of default
4. Trustees deeds of sale following foreclosure
5. Recording documents which purport to assign from MERS to some other entities, even entities that are not MERS Members, a deed of trust/mortgage without first transferring the underlying promissory note evidencing such indebtedness
6. Preparing and recording other documents intended to avoid or decrease recording fees re documents that would otherwise have reflected the truth.

**Chase Home Finance and Washington Mutual Bank, F.A. with reckless disregard, and or willful ignorance, recorded and continue to record documents wherein employees of companies other than MERS falsely identify themselves as being "officers and or vice president" of MERS, or in some instance, of the Federal Deposit Insurance Corporation or other entity which has no knowledge of the actions of these supposed authorized signatories or certifying officers. These so called certifying "officers and / or vice president" have no employment relationship with MERS and are not in fact officers or vice presidents of MERS.** MERS, Chase Home Finance and Washington Mutual Bank, F.A. non MERS employees to identify themselves as officers or vice president of MERS because such identification creates the illusion of a recorded chain of title whereby the actual creditors and / or loan beneficiaries remain hidden from public record. Because promissory notes were frequently assigned, the falsely recorded documents decreased the number of recording fees paid by Chase Home Finance and Washington Mutual Bank, F.A..

Chase Home Financeand Washington Mutual Bank, F.A. with reckless disregard, and / or willful ignorance, or otherwise, with the requisite actionable scienter, caused and continued to cause to be made and used false records and statements designed to conceal, avoid and or decrease their obligations to pay recording fees to the Counties and the State.

The stated MERS business model was to eliminate the recordation of assignments and transfers of interests that affect real estate throughout the State and the remaining jurisdictions of the United States. MERS advertises itself, via its website and written material as providing the ability to avoid the time and expense of recording through a scheme whereby MERS falsely holds itself out to the world as a beneficiary, or as a nominee or mortgage. Chase Home Finance and Washington Mutual Bank, F.A. knew or should have known at all relevant times that this recording fee avoidance scheme was predicated upon the false recordings disclosed in this Complaint.

Chase Home Finance, Washington Mutual Bank, F.A. and others affirmatively acted to cause MERS to be listed as the lien holder of record on all recorded security instruments relating to notes registered on the MERS system.

The process of falsely using MERS as the beneficiary under a security instrument to avoid naming the true owner of the applicable Note was devised to eliminated recording of documents affecting interests in real estate, in violation of the state laws under which MBS trusts were created, the laws of the State as reference to hereinabove, and Chase Home Finance and Washington Mutual Bank, F.A. continue to use those false documents to avoid payment required recording fees and to purse judicial and non judicial foreclosure around the country.

When the note that was associated with a deed of trust on real estate was transferred to a non MERS member, the policies and terms and conditions of MERS required that the assignment of the loan from MERS to the non MERS member be executed by MERS and recorded in the county where the real property was / is located and thereby the loan would be deactivated from the MERS System.

The failure to record the required transfers and assignments of security interests and the recordation of knowingly false documents was motivated by the financial self interest of Chase Home Finance and Washington Mutual Bank, F.A. to improperly profit from their business activities, or alternatively, had that effect. Further, having filed false documents such as false recordings enable Chase Home Finance and Washington Mutual Bank, F.A. to profit from their other activities with respect to their:

1. acquisition of credit default swap
2. credit derivatives
3. lack of any loan origination underwriting standards
4. lack of any underwriting standards for the securitized mortgage trusts Chase Home Finance created
5. hide / clouded their failure to comply with any IRS REMIC rules regarding transfer of loans to the REMIC entities
6. create the appearance of an arm-length transaction so as not to violate the well established principle of good faith and fair dealing.

The designation of MERS as a beneficiary or nominee of the lender on a deed of trust was a false designation of and / or by MERS in numerous ways namely:

1. neither MERS nor the "lender" so designated was the true lender
2. MERS was not the nominee of the true lender of the funds for which the promissory note was executed
3. MERS did not collect or distribute payment, pay escrow items, hold client funds on deposit, pay insurance for clients or Tracy R. Mitchell, or pay taxes
4. MERS had no right to collect money on the note or to receive and proceeds or value from any foreclosure
5. the name "MERS" does not appear on any promissory note secured by real estate in the State.

Chase Home Finance and Washington Mutual Bank, F.A. has used the non judicial foreclosure statute to foreclose upon Tracy R. Mitchell with false documents in violation of the laws of the State. If accurate and truthful records would be maintained and recorded by Chase Home Finance and Washington Mutual Bank, F.A. these truthful documents would result in the payment of fees for the recording of such documents.

16

Chase Home Finance and Washington Mutual Bank, F.A. availed themselves of the benefit of the non judicial foreclosure system through the recording of false statements without paying the obligations under those same recording statutes can be demonstrated by cradle to grave review of the documents in the life cycle of the MERS deed of trust.

When a mortgage loan is securitized (placed in a mortgage loan pool that is subsequently sold in the securities market), and does not default, the false designation of use of MERS allows

1. the loan funder
2. the securitized loan sponsor
3. the loan master servicer
4. the loan sub servicers
5. the securitized loan trust
6. the loan custodian
7. the securitized loan trustee
8. the credit default swap and credit derivatives parties / counter parties and other to avoid recording any interest that each and every one of them would have in the property secured by the deed of trust / deed.

MERS, Chase Home Finance and Washington Mutual Bank, F.A. effectuate transfers of real estate interests via "electronic handshake" that the Legislature of the State intended to be recorded by the county land recorders for the purpose of providing an accessible public record that reflects the actual transfers of interests in real estate available to the public and particularly, by other interested secured creditors and judgment holders where the real estate is situated. That are, Chase Home Finance and Washington Mutual Bank, F.A. availed themselves of the protection and benefit of the recording and non judicial foreclosure statutes, while avoiding full payment and while impairing integrity of the land records.

Chase Home Finance and Washington Mutual Bank, F.A. should have known the MERS system was a sham; was intended to wrongfully bypass the counties recording requirement; divested Tracy R. Mitchell of the right to know who owned the promissory note that was executed with the deed of trust / mortgage or other security instrument and recorded false documents to initiate and pursue non judicial foreclosure, and to otherwise decrease or avoid payment of fees to the Counties and the Cities where the real estate is located

Chase Home Finance and Washington Mutual Bank, F.A. actions complained of hereinabove were taken with reckless disregard, and or willful ignorance that the recording of false documents and the failure to record truthful documents jeopardized the real property recording system adopted by the Legislature for the purpose of maintaining certainty in real estate transactions and for the public knowledge

These recording and failures to record created / create a cloud on title as to property secured by MERS deeds of trust / mortgage, security instruments and lien releases throughout the State.

Unlike the recordation system adopted by the General Assembly of the State of Georgia, MERS does not have a reasonable monitoring system to ensure that knowledge of the ownership of the interests in real estate is made available to the public. MERS failed to monitor the documents recorded in the counties of the State and failed to monitor the transfer of interests in real estate by MERS members and so called "authorized signatories" or "certifying officers"

Chase Home Finance and Washington Mutual Bank, F.A. has used these security instruments with MERS being falsely designated as the "beneficiary" as a means of

18

effectuating foreclosures by use of the county Recorders just prior to the foreclosure

by recording documents only to the extent of effectuating the foreclosure without

recording any of the interim transfers prior to the foreclosure.

MERS claims to have "saved" at least $2.4 billion dollars in recording costs by not

filing or recording documents that reflect the transfer of an interest in real estate on loans

that has a MERS deed of trust or security instrument which documents would have

otherwise been recorded and which costs are due and owing to the counties of the State

by Chase Home Finance and Washington Mutual Bank, F.A.

1. MERS is not a beneficiary even if the mortgage deed or deed of trust states otherwise.
2. MERS lacks standing in bankruptcy to seek relief from stay.
3. MERS lacks ANY financial interest in:
   a. the obligation
   b. the note
   c. the mortgage
   d. any assignment, allonge (often misidentified as an assignment chain clouds the homeowner's title by extension of the reasoning set forth in the case decision reported below.
4. MERS cannot acquire rights to foreclose unless it acquires a REAL financial interest:
   a. In a non-judicial state
   b. In a judicial state
5. MERS appearance on the deed of trust renders the mortgage deed or deed of trust invalid.
6. MERS appearance on the deed of trust renders the mortgage deed or deed of trust VOID.
   a. This means there is no security instrument even if the obligation is still outstanding.
   b. This means there is no security instrument even if the note is still outstanding.
   c. This means the obligation arising from the funding of the loan or security to or for the benefit of the homeowner is UNSECURED.
   d. This means that there is no legal procedure to take property real or personal, tangible or intangible by virtue of using non judicial procedure or judicial procedure unless the creditor (i.e. the one who advance actual cash for the funding of the obligation) get a money judgment against the homeowner a process which by definition requires the creditor to use exclusively judicial procedure in which they must properly serve

7. Allegations that if taken as true would entitle the creditor to a money judgment (e.g. "I gave money for the benefit of this homeowner and I never got the money back from anyone") By the way this debt, even if they get a judgment is dischargeable in bankruptcy.

8. Attachments to the lawsuit of ALL documents that conform to the allegations Your Defense, affirmative Defense and Counterclaims Discovery on both sides:

   a. **Interrogatories:** how they know what they know who they know where did the person signing the interrogatories get their information – when were they hire, by whom, when did they work for MERS, how many paychecks did they get from MERS etc., what documents do they rely upon, what do they call these / those documents, where are those documents, who has them, what is the title of that person, by whom are they employed, what's their telephone number what's address.

   b. **I am REQUESTING YOUR ADMISSIONS:**

On September 25, 2009, R.K. Arnold, the President and CEO of MERSCORP, Inc the parent corporation of Mortgage Electronic Registration System, Inc. was deposed in Alabama. Arnold is also an Officer of MERS.

**Arnold admitted MERS does not have a beneficial interest in any mortgage; does not loan money; does not suffer a default if monies are not paid. On November 11, 2009, William C. Hultman was deposed in Alabama and made the same admissions. And, of course, the internal agreement used by MERS expressly disavows any beneficial interest.**

One tactic, if confronted with foreclosure in Nevada, is to elect mediation. At the mediation, demand the assignment, i.e., the assignments which would cure the problem (according to Judge Riegle's March 31, 2009, opinion, as affirmed by Judge Dawson on December 4, 2009). MERS and / or the lender have been unable to produce any such assignments – because they almost certainly do not exist.

**Request the Mediator to check the appropriate box, i.e. the box which memorializes a failure by the lender to produce all required documents (all assignments must be produced per AB 149 – incorporated into Chapter 107 of the Nevada Revised Statutes). The requisite Certificate will not issue as a result. The Notice of Default is effectively negated. The lender must thereupon issue a new Notice and the borrower should is again at liberty to elect mediation within 30 days of receipt thereof. The borrower should pay his or her taxes, and insurance but not the mortgage especially if upside down. It is a stopgap measure.**

If the courts continue to follow the reasoning of Judge Riegle and Dawson a borrower may if otherwise eligible declare bankruptcy bring an adversary proceeding within the bankruptcy and:

**Discharge the mortgage debt (which re a MERS mortgage is not really a mortgage but rather an unsecured debt – per Judge Riegle)**

Or Tracy R. Mitchell may initiate litigation based upon causes of action for breach of contract, fraud by omission and racketeering (Chapter 207 of the Revised Statutes). By conducting systemic predatory lending and coupling predatory lending with credit default swap, i.e. bets homes would be foreclosure upon, the lender breached the implied duty of good faith and fair dealing – the duty to refrain from frustrating the purpose of the contract. Tracy R. Mitchell generally harbored two main purposes to secure a place to live and to safeguard / create an investment. By engaging in systemic predatory lending the frustrated the second purpose. They devalued the collaterized asset and breached the lending contract. Because this information was not disclosed, fraud by omission occurred. A series of fraudulent act constitutes racketeering, which gives rise to claim for treble damages, plus fees and costs.

In Florida, Judge Jon Gordon of Miami Florida confirmed that:

1. MERS, by its own self definition, does not own or hold or mortgages, and is not a vehicle for transferring interests (which means it does not assign, sell convey, deed, bargain or assign interest), so MERS which does not own mortgages, cannot foreclose yet (little realized) neither can it assign. The big banks constantly present purported mortgage assignments by MERS, back dated (though other business executive go to jail for back dating financial documents), for the big banks are depending on us to believe so generally in "assignment" that we will ignore the reality that MERS cannot own and its cannot assign what it does not own. MERS only records what is going on with others, while serving as "non owning" mortgagees.

2. Thus, MERS as the mortgagee in the MERS mortgage, is a crippled, invalid, impotent mortgagee, since as a non owner, non holder, it cannot foreclose, and as "not a vehicle for transferring interests" it cannot assign.

3. But MERS is still on the MERS mortgage as mortgagee. (This is one place where people's assumptions come into play:
    a. They assume that if one is called mortgagee then one can foreclosure, which is not always true.
    b. One must be the owner and the holder of a note and mortgage in order to foreclose. MERS does not
    c. MERS cannot own or hold notes or mortgages, and so it cannot foreclose
    d. Neither can it assign, for one may only assign what one owns and MERS does not own.)

No one else on the MERS mortgage is mortgagee. Therefore notwithstanding and lip service in the MERS mortgage alleging that any other party may foreclose in view of that fact that an entity has to be a mortgage (have to have a property mortgaged to it and meet all other legal tests, in order to foreclose on a property), no one else on the MERS mortgage documents may foreclose, because no one else named mortgagee, or has property mortgaged to it (there is no one but MERS named in the mortgage contract able to foreclose, because no one else is

mortgagee). And MERS cannot assign anyone else a mortgage because MERS does not own any mortgages or notes.

4. Mortgage and notes can be assigned, if someone owns them, but MERS does not own notes or mortgages, neither is it a vehicle for transferring interests so MERS cannot assign what it does not own. The mortgage contract makes MERS, which cannot own notes or mortgages the mortgagee, but s a mortgagee which cannot own notes or mortgages.

But a mortgagee, to be able to foreclose a note and mortgage has to be able to own mortgage and note in order to foreclose (and therein lies a solution even for non "own and hold" states, for in every state a mortgagee has to at least "own" the mortgage in order to foreclose on it, and MERS, by definition, though made mortgagee, is defined as "does not own or hold notes or mortgagees"). MERS is thus an invalid and impotent, quite powerless mortgagees yes a mortgage, but a mortgagee, a mortgagee which cannot do anything except record data in its own records. MERS cannot foreclose yet MERS is still the only mortgagee names in the MERS mortgage contract.

5. One might say, well, let us say why does not MERS assign its mortgagee statue? But mortgagee status is not assigned or assignable: mortgagee "status" comes only by having property mortgaged to you. Only mortgages are assigned (by those who "own" them but MERS does not own, so it cannot assign. Again, mortgagee "status" is not subject to assignment: it comes by having property"mortgage to you". It is a matter of definition in the law of the mortgage contract. The "mortgagee" is the on to whom a property is mortgaged. Mortgages are assignable, when they are owned but MERS by definition does not own or hold notes or mortgages, neither are it a vehicle for transferring interests (even its own, which are none anyhow, for it does not own or hold.

6. Again MERS is the only mortgagee defined in the MERS mortgage contract. Conclusion: MERS cannot foreclose (for itself), does not own and does not transfer interest. Since one may only assign what one has, be that an item, or rights, or powers, MERS cannot assign mortgages, or notes, or any rights to foreclose, because MERS does not have (does not "own"). The MERS mortgage is thus a very crazy, badly written contract, because it makes MERS, which does not own notes or mortgages, mortgagee. Since MERS does not own or hold, MERS cannot assign or convey or foreclose, but MERS is nevertheless made mortgagee by the MERS mortgage contract, so any property mortgaged to MERS as mortgagee was plainly and simply mortgaged to a "mortgagee "which cannot own the mortgage, or transfer interest in it (which it does not have), or foreclose. The law has a saying "The law does not prevent anyone from making a bad bargain." And the MERS lawyers just made a very bad bargain, indeed. MERS, in effect, is a powerless mortgagee, a mortgagee which might be termed a nullity of a mortgagee. It does not own any mortgage, or note, so it cannot assign

any mortgage, or note but property is mortgaged to it yet MERS cannot do anything with or about it.

7. But wait again someone ask. The MERS mortgage contract says (or has some lip service in it to the effect that) the Lender may foreclose at this option. What of that? Problem: the Lender is not the mortgagee. The lender has not property mortgaged to it. And MERS does not own notes or mortgages, or transfer interest, so MERS cannot assign what it does not own, and cannot transfer. The property was mortgaged to MERS, not to the Lender. It cannot get out of having been mortgaged to MERS as mortgagee. Even if someone were to satisfy a note with a full term and or amount of payment what could MERS add to it? MERS does not own mortgages so while MERS might be able to say with no impact that a mortgage "was satisfied" (if it knew, but it does not receive payments, so how would it know?), MERS could not say that its mortgage was satisfied for MERS does not even own the mortgage. It is the mortgagee, yet it cannot own the note or mortgage, or foreclose. Who does own the mortgage? NO ONE?

8. MERS did not lend, so MERS is not valid creditor with any right to collect a debt or enforce a debt and it does not own mortgages so it cannot foreclose. Neither can MERS assign any power it does not have. The property is mortgaged to MERS, but MERS is a mortgagee which does not own mortgages, or notes or transfer interests, by mortgage contract that made MERS, and only MERS, the only mortgagee, in spite of all its impotencies and inabilities. It is as if I put someone who is in a coma in charge of my life. Great job, Wall Street.

9. MERS is a crippled mortgagee, crippled by its own inabilities, its own powerlessness to own and hold notes and or mortgages; by its own self definition from its creation.
So why do the big banks go to the charade of purporting an assignment of mortgages from MERS, even assuming the risk of attempting now ever more clearly recognized illegal "backdating" for which more and more corporate executive are going to jail these days, trying to put an earlier in an assignment than the real date of execution of the assignment? Purported because as we remember, MERS still cannot assign what it does not own, and is defined as unable to transfer interest or any other thing it does not have.

Chase Home Finance and Washington Mutual Bank, F.A. does this because they think we "expect" or assume assignment(s) we believe or assumed that assignment always works (which is another untruth). The big banks and their courtroom agents do it because they think we will turn expectation into assumptions:
   a. They think we are too dumb to look, to examine, to ask, to question, and will fail to determine if there is any reality and or validity behind the assignments they purport.

b.  They want to make it "look right" and they count on us to jump to the conclusion, the incorrect assumption, that such assignment is right rather than what is true that it is vacuous empty invalid null and void.

10. Chase Home Finance and Washington Mutual Bank, F.A. would like us to think that MERS could assign its powers to the Lender (which is paid some lip service in the MERS mortgage contract), but the fact that we can you can only assign powers only you have and MERS has no powers beyond recording data. It cannot own, cannot hold, and it cannot transfer. The assumption Chase Home Finance and Washington Mutual Bank, F.A. depend on us to make is a false and deceptive lie induced by deception with a reliance on us to jump to the wrong assumption (that what they purport has any reality). Chase Home Finance and Washington Mutual Bank, F.A. depend on us to assume that is false, and grant them what they want by our failure to look and see failure to examine, failure to inquire into the reality behind the claims.

MERS has no powers, nor does it own mortgages, so how can MERS assign what it does not have?

So there is nothing that could change the Lender position mentioned in the MERS mortgage contract into a real, old fashioned conventional "mortgagee" because no property was mortgage to them and the entity to which property was mortgaged (MERS) is not empowered to own mortgages or notes or assign them which it does not own.

Actually, absent knowledge to the contrary, I think it is a crime for any entity to participate with Chase Home Finance and Washington Mutual Bank, F.A. in attempting to get away with back dating a misleading assignment to suggest that they conveyed more than they conveyed at a time other than when they really executed the assignment. I think that is called fraud as well as whatever technical term the back dating of financial documents does by.

You can arrive at a verbal agreement to do an assignment but I do not think Chase Home Finance and Washington Mutual Bank, F.A. or MERS would waste its time doing such on a lost note, which mine was alleged to be and a verbal agreement could give grounds for suing for the actual assignment if the parties wanted to back out of a true agreement, but I do not have an actual assignment until the documents are executed. One cannot date the assignment until it is actual, until it is executed. On that on several other very important aspects of the legalities of these mortgages which have been turned into securities. **SEE MotiontoVacateDenied Ibanez Larach Mass Oct 2009.pdf**

A party "must have some actual, justiciable interest."*Id* They must have a recognizable stack. **Wahl v Bruan, 980 S.W.2d 322 (Mo. App E.D. 1998).** Lack of standing cannot be waived and may be considered by the court sua sponte.

**Brock v. City of St. Louis, 724 S.W.2d 721 (Mo. App. E.D. 1987).** If a party seeking relief lacks standing, the trial court does not have jurisdiction to grant the requested relief. **Shannon, 21 S.W.3d at 842**

In **Bellistri v Ocwen Loan Servicing, LL:C, 284 S.W.3d 619 (Mo. App. 2009),** held that MERS had no ability to transfer ownership of the loan because it did not control the note and recorded ownership of the mortgage"as nominee" meant nothing. Since by that analysis the assignment meant nothing there was no point in notifying MERS of prior foreclosures, even if the statute requires notice to parties of record.

In the recent decision in **Chase Home Finance, LLC v. Fequiere 119 Conn.. App. 570, - A.2d-,2010 WL 653239 (3/2/10),** the foreclosing mortgagee had possession of the note but a challenge was made similar to Bellestri, that MERS, the record owner of the mortgage lacked the ability to assign the mortgage. The court held that the question of whether MERS had the possession of the note is moot, since transfer of the note automatically transfers the rights under the mortgage insofar as the right to foreclose is concerned.

According to the court "standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke jurisdiction of the court unless he / she has in an individual or representative capacity some real interest in the cause of action, or legal or equitable right, title or interest in the subject matter of the controversy." **Wilcox v Webster Ins., Inc., 982 A.2d 1053 (2009).** The court cited **Fleet National Bank v. Nazareth, 818 A.2d 69 (Conn. Ct. App. 2003)** and stated that standing is not a technical rule intended to keep aggrieved parties out of court" Rather it is a practical" rule designed to limit vexatious non justiciable cases.

MERS does not have the authority to assign the mortgage to anyone other than the "nominator". When MERS assigned the note to Chase Home Finance and Washington Mutual Bank, F.A. the Note became unsecured and the deed of trust became worthless. The use of MERS to make ownership of the note and mortgage easier to trace also made the deed of trust unenforceable. In order to prove a claim under the Note or to verify the debt, the Holder must explain how it acquired any rights under the Note and whether it is acting in its own right or as an agent for another.

MERS was created to solve problems created during the foreclosure epidemic of the 1980s when it was sometimes impossible to track ownership of mortgages after several layers of saving and loans and banks had failed without recording assignments of mortgages.

MERS is an innovative process that simplifies the way mortgage ownership and servicing rights are originated, sold and track. Created by the real estate finance

industry, MERS eliminated the need to prepare and record assignments when trading residential and commercial mortgage loans.

MERS is the name mortgage holder in transactions having an aggregate dollar value in the hundreds of billions, and its service of providing a way to trace ownership of mortgage has plated a large role in the securitization of mortgages and the marketability of derivative mortgage backed securities because it seemed to eliminate the necessity of recording assignment mortgage securities (packages of many mortgages) to be traded in the secondary market with less risk.

## THE DEFENDANTS II

1. The defendants Chase Home Finance and Washington Mutual Bank, F.A. directs controls, formulates, or participates in the acts or practices alleged in this complaint. Chase Home Finance and Washington Mutual Bank, F.A. acts in the interests.

2. Chase Home Finance and Washington Mutual Bank, F.A. are "debt collectors" as defined in Section 803(6) of the FDCPA, 15 U.S.C 1962a(6)

3. In connection with servicing and collection of mortgage loans, Chase Home Finance and Washington Mutual Bank, F.A. furnished information to consumer reporting agencies. As such, Chase Home Finance and Washington Mutual Bank, F.A. are subject to Section 623 of the FCRA, 15 U.S.C. 1681s-2 which imposes a series of duties and prohibitions upon any person or entity that furnishes information to a consumer reporting agency.

4. Chase Home Finance and Washington Mutual Bank, F.A. are "creditors" as that term is defined in Section 103(f) of the TIL, 15 U.S.C. 1602(f), and Section 226.2(a)(17) of Regulation Z, 12 C.F.R. 226.2(a)(17), and therefore are required to comply with applicable provision of the TILA and Regulation Z.

## DEFENDANTS BUSINESS PRACTICES

1. Chase Home Finance and Washington Mutual Bank, F.A. plays a prominent role in the secondary market for residential mortgage loans by acquiring, servicing, and selling large volume of such loans. In recent years, during the explosive growth of the mortgage industry, Chase Home Finance and Washington Mutual Bank, F.A. acquired and securitized loans at a rapid pace pay inadequate attention to integrity of consumers' loan information and to sound servicing practices. As a result, in servicing Tracy R. Mitchell loan, Chase Home Finance and Washington Mutual Bank, F.A. neglected obtain timely and accurate information on Tracy R. Mitchell loan made inaccurate claims to Tracy R. Mitchell, and engaged in unlawful collection and servicing practices.

2.  Chase Home Finance and Washington Mutual Bank, F.A. operate a vertically integrated mortgage business, which includes the acquisition and servicing of residential mortgage loans, and the packaging of those loans into mortgage backed securities ("MBS") for sale to investors. Chase Home Finance and Washington Mutual Bank, F.A. are the mortgage servicer for many loans acquired by Chase Home Finance and Washington Mutual Bank, F.A. Chase Home Finance and Washington Mutual Bank, F.A. employees are primarily responsible for the acquisition of loans, such as the identification, bidding, and negotiation of deals, although frequently Chase Home Finance and Washington Mutual Bank, F.A. are listed as Tracy R. Mitchell and subsequent sellers on MBS documents. After Chase Home Finance and Washington Mutual Bank, F.A. has acquired loans and Chase Home Finance and Washington Mutual Bank, F.A. began servicing them, Chase Home Finance and Washington Mutual Bank, F.A. packaged the loans into MBS. After loans have been packaged into MBS and sold on the secondary market, Chase Home Finance and Washington Mutual Bank, F.A. continued to service the loans pursuant to servicing agreements. Chase Home Finance and Washington Mutual Bank, F.A. also retain a residual ownership interest in the loans

3.  Many of the loans acquired, serviced and sold by Chase Home Finance and Washington Mutual Bank, F.A. are subprime and or "Alt-A," i.e. less than prime, or "A" credit. These loans include "nontraditional" mortgages such as pay option adjustable rate mortgages ("ARMs"), interest-only mortgages, negative amortization loans, and loans made with little or no income or asset documentation. In recent years, Chase Home Finance and Washington Mutual Bank, F.A. funded and acquired an increasing number of loans, and Chase Home Finance and Washington Mutual Bank, F.A. portfolio overall grew significantly.

4.  As a mortgage servicer, Chase Home Finance and Washington Mutual Bank, F.A. made various representations to Tracy R. Mitchell including on loans newly acquired by Chase Home Finance and Washington Mutual Bank, F.A. Specifically, in collection calls and notices, monthly statements, payoff statements, foreclosure notices, bankruptcy filings, and otherwise, Chase Home Finance and Washington Mutual Bank, F.A. routinely made representations to Tracy R. Mitchell loan, including:

    a.  The unpaid principal balance.
    b.  The due date.
    c.  The interest rate.
    d.  The monthly payment amount
    e.  The delinquency status
    f.  Fees and corporate advance assessed by prior loan servicer(s).
    Chase Home Finance and Washington Mutual Bank, F.A. are supposed to make these representations to the Tracy R. Mitchell within days of the transfer of the loans for servicing to Chase Home Finance and Washington Mutual Bank, F.A.

For example, Chase Home Finance and Washington Mutual Bank, F.A. began making collection calls on those transferred loans that are purportedly past due. However Chase Home Finance and Washington Mutual Bank, F.A. made early collection calls and send collection notices to consumers before they have obtained complete loan information from the seller and before they have conducted quality control and other data integrity checks to ensure the accuracy of the representations it makes to Tracy R. Mitchell.

5.  Chase Home Finance and Washington Mutual Bank, F.A. lacked a reasonable basis for their representations to Tracy R. Mitchell, because they failed to obtained accurate and complete information about Tracy R. Mitchell loan account before making the representation. Despite indications that loan data obtained from prior loan servicers and loaded onto its servicing system was likely inaccurate or unverified, Chase Home Finance and Washington Mutual Bank, F.A. nonetheless used that data to make representations to Tracy R. Mitchell about his loan. As a result, Chase Home Finance and Washington Mutual Bank, F.A. has made inaccurate claims to Tracy R. Mitchell and engaged in unwarranted collection practices.

6.  As a mortgage servicer, Chase Home Finance and Washington Mutual Bank, F.A. received Tracy R. Mitchell disputes regarding the status and handling of their loans. Chase Home Finance and Washington Mutual Bank, F.A. has failed to investigate and resolve Tracy R. Mitchell dispute in a timely manner. In addition, in numerous instances, Chase Home Finance and Washington Mutual Bank, F.A. has failed to report Tracy R. Mitchell loan account as disputed when furnishing information to consumer reporting agencies.

7.  In connection with loans that were in default when obtained by Chase Home Finance and Washington Mutual Bank, F.A. Chase Home Finance and Washington Mutual Bank, F.A. has failed to disclose in initial communication with Tracy R. Mitchell that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose. In addition Chase Home Finance and Washington Mutual Bank, F.A. has failed to send Tracy R. Mitchell written notice, or have sent untimely or defective notices, containing the amount of the debt, the creditor's name, and Tracy R. Mitchell right to dispute the debt and obtain verification of the debt.

8.  Including connection with newly-acquired loans, Chase Home Finance and Washington Mutual Bank, F.A. has made collection calls to Tracy R. Mitchell repeatedly and with excessive frequency under the circumstances. In addition, Chase Home Finance and Washington Mutual Bank, F.A. has made collection calls using cell phone that display only Chase Home Finance and Washington Mutual Bank, F.A. local area code on Tracy R. Mitchell caller identification display ("caller ID"), and without identifying its name on the caller ID. Chase Home Finance and Washington Mutual Bank, F.A. used cell phones and caller

ID in this fashion notwithstanding that U.S. Bank Home Mortgage was not calling from Tracy R. Mitchell local area code.

9.  As a mortgage servicer, Chase Home Finance and Washington Mutual Bank, F.A. "advances" money to Tracy R. Mitchell to pay for items such property inspections, that it deems necessary to protect the note holder's rights in the property. Pursuant to the mortgage contract, Chase Home Finance and Washington Mutual Bank, F.A. adds these "corporate advance" to Tracy R. Mitchell loan balances. In many instances, however Chase Home Finance and Washington Mutual Bank, F.A. has charged Tracy R. Mitchell for property inspections that were not authorized by the mortgage contract. For example, Chase Home Finance and Washington Mutual Bank, F.A. has charged Tracy R. Mitchell for alleged property inspection fees, where the purpose of the inspector's visit to Tracy R. Mitchell home was to attempt to collect on the loan. In addition, Chase Home Finance and Washington Mutual Bank, F.A. has charged Tracy R. Mitchell for property inspection on newly acquired loans notwithstanding that Chase Home Finance and Washington Mutual Bank, F.A. **lacked** a reasonable basis for the need for a property inspection.

10. As a mortgage servicer, Chase Home Finance and Washington Mutual Bank, F.A. also charged Tracy R. Mitchell other fees, such as late fees in connection with alleged defaults and prepayment penalties in connection with loan payoffs. Chase Home Finance and Washington Mutual Bank, F.A. has charged Tracy R. Mitchell for fees, including late fees and prepayment penalties, in violation of state laws.

11. In addition, Chase Home Finance and Washington Mutual Bank, F.A. has charged Tracy R. Mitchell a loan modification fee and automatically included this fee in the principal balance of the modified loan on which interest accrued. In doing so Chase Home Finance and Washington Mutual Bank, F.A. has caused Tracy R. Mitchell loan balance to increase and create a new transaction, but has failed to provide Tracy R. Mitchell with a new loan disclosure as required by TILA's Regulation Z. In addition, Chase Home Finance and Washington Mutual Bank, F.A. has misrepresented that its modification fee is a corporate advance authorized by the mortgage contract, and has charged Tracy R. Mitchell for the fee without authorization.

12. When Chase Home Finance EverHome and Washington Mutual Bank, F.A. requested the amount of money necessary to reinstate or payoff their loan, and in other instances where Chase Home Finance and Washington Mutual Bank, F.A. seeks payment, Chase Home Finance and Washington Mutual Bank, F.A. demand often contain fees that have been assessed by Chase Home Finance and Washington Mutual Bank, F.A. including fees for property inspections, late fees, prepayment penalties, and loan modifications. These demands include unauthorized fees.

## FEDERAL TRADE COMMISION ACT VIOLATIONS

### Count I: Misrepresentation of Amount Owed

1. Plaintiff incorporates by reference all the foregoing paragraphs.

2. In the course and conduct of their loan servicing and collection, Chase Home Finance and Washington Mutual Bank, F.A. has represented, expressly or by implication, that Tracy R. Mitchell owe the amounts specified in Chase Home Finance and Washington Mutual Bank, F.A. communications

3. Chase Home Finance and Washington Mutual Bank, F.A. has represented directly or indirectly expressly or by implication that Tracy R. Mitchell is obligated to pay the amount specified in Chase Home Finance and Washington Mutual Bank, F.A. communication for default related services such as property inspections, title reports and foreclosure trustee services

4. In truth and fact, Tracy R. Mitchell does not owe the amounts that have been specified in Chase Home Finance and Washington Mutual Bank, F.A. communication. Tracy R. Mitchell does not owe the amounts specified because, for example
   a. Fees included in the amounts specified are not allowed under the mortgage contract or permitted by law, and or
   b. The amounts specified have been assessed or calculated incorrectly.

5. Therefore, Chase Home Finance and Washington Mutual Bank, F.A. representation as set forth in paragraph 2 and 3 are false or misleading and constitute deceptive act or practices in violation of Section 5(a) of the FTC ACT, 15 U.S.C. 45(a).

6. Also in truth and in fact Tracy R. Mitchell is not obligated to pay the amounts that have been specified in Chase Home Finance and Washington Mutual Bank, F.A. communication for default related services such as property inspection title reports and foreclosure trustee services. Chase Home Finance and Washington Mutual Bank, F.A. include in the amount they represent as owed fees that have been marked up beyond the actual cost of the services and or fees that are for the performance of unnecessary or unreasonable services in violation of the mortgage contract.

7. MERS is not registered to do business in the state of Georgia.

8. When MERS assigned the Note to Chase Home Finance and Washington Mutual Bank, F.A., the Note became unsecured and Deed of Trust became worthless.

9. The use of MERS to make ownership of the Note and mortgage made the Deed of Trust unenforceable.

10. Chase Home Finance and Washington Mutual Bank, F.A. have no interest in the property.

11. MERS is name as nominee as beneficiary. MERS is not name on the Note. If the note is split from the security instrument, there is NO enforcement mechanism available under the Deed of Trust. Once the Deed of Trust and Note are split there is NO way to get them back together.

12. The Note and Deed of Trust both require payment to be made to "Lender" NOT MERS.

13. Promissory Note does not make reference to MERS

14. Deed of Trust does not name Chase Home Finance and Washington Mutual Bank, F.A. as the beneficiary but instead MERS is the grantee under the Security Instrument.

15. The Note is split from the Security Instrument, there is no enforcement mechanism available under the Deed of Trust. Once the Deed of Trust and the Note are split there is no way to get them back together.

16. Chase Home Finance and Washington Mutual Bank, F.A. is not in possession of the original promissory note.

17. Chase Home Finance and Washington Mutual Bank, F.A. lacked standing

### **Count II: Unfair and Deceptive Assessment and Collection of Fees**

1. Plaintiff incorporates by reference all of the foregoing paragraphs.

2. In the course and conduct of their loan servicing and collection, Chase Home Finance and Washington Mutual Bank, F.A. have represented, expressly or by implication, that fees assessed and collected by Chase Home Finance and Washington Mutual Bank, F.A. were:
   a. Allowed under the mortgage contract and
   b. Permitted by law.

3. The fees assessed and collected by Chase Home Finance and Washington Mutual Bank, F.A. were:
   a. Not allowed under the mortgage contract or
   b. Not permitted by law. Nonetheless, Chase Home Finance Home and Washington Mutual Bank, F.A. improperly assessed and collected these fees.

4.   Chase Home Finance and Washington Mutual Bank, F.A. action has caused and likely to cause substantial injury to Tracy R. Mitchell. This injury is not reasonably avoidable by consumer and not outweighed by countervailing benefits to Tracy R. Mitchell.

5.   Chase Home Finance and Washington Mutual Bank, F.A. acts or practices constitute unfair and deceptive acts or practices in or affecting commerce in violation of Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. 45(a)

6.   In the course and conduct of their loan servicing and collection, Chase Home Finance and Washington Mutual Bank, F.A. have assessed and collected default related fees that they were not legally authorized to asses and collect pursuant to the mortgage contract.

7.   Chase Home Finance and Washington Mutual Bank, F.A. actions caused or are likely to cause substantial injury to Tracy R. Mitchell.

8.   Chase Home Finance and Washington Mutual Bank, F.A. cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to Tracy R. Mitchell.

9.   Therefore, Chase Home Finance and Washington Mutual Bank, F.A. practices as described in paragraph 6 above constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. 45(a) and 45(n).

10.  MERS is not registered to do business in the state of Georgia.

11.  When MERS assigned the Note to Chase Home Finance and Washington Mutual Bank, F.A., the Note became unsecured and Deed of Trust became worthless.

12.  The use of MERS to make ownership of the Note and mortgage made the Deed of Trust unenforceable.

13.  Chase Home Finance and Washington Mutual Bank, F.A. have no interest in the property.

14.  MERS is the grantee under the Security Instrument is not name on the Note. If the note is split from the security instrument, there is NO enforcement mechanism available under the Deed of Trust. Once the Deed of Trust and Note are split there is NO way to get them back together.

15.  The Note and Deed of Trust both require payment to be made to the "Lender" not MERS.

16.  Deed of Trust does not name Chase Home Finance and Washington Mutual Bank, F.A. as the beneficiary but instead names MERS solely as nominee.

17. Chase Home Finance and Washington Mutual Bank, F.A. are not in possession of the original promissory.

18. Chase Home Finance and Washington Mutual Bank, F.A. lacked standing

## Count III: Deceptive Reasonable Basis Claims

1. Plaintiff incorporates by reference all the foregoing paragraphs.

2. In the course and conduct of their loan servicing and collection, defendants have represented, expressly or by implication, that they possessed and relied on a reasonable basis substantiating their representation about Tracy R. Mitchell.

3. In truth and in fact, Chase Home Finance and Washington Mutual Bank, F.A. have not possessed and relied on a reasonable basis substantiating their representations about Tracy R. Mitchell.

4. Therefore, Chase Home Finance and Washington Mutual Bank, F.A. representations as set forth in paragraph 2 are false or misleading and constitute deceptive acts and or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. 45(a).

5. **MERS is not registered to do business in the State of Georgia**

6. **The loan was assigned to MERS (Mortgage Electronic Registration System) MERS does not hold any interest in the loan.**

7. When MERS assigned the Note to Chase Home Finance and Washington Mutual Bank, F.A., the Note became unsecured and Deed of Trust became worthless.

8. The use of MERS to make ownership of the Note and mortgage made the Deed of Trust unenforceable.

9. Chase Home Finance and Washington Mutual Bank, F.A. have no interest in the property.

10. MERS is name as nominee as beneficiary. MERS is not name on the Note. If the Note is split from the security instrument, there is NO enforcement mechanism available under the Deed of Trust. Once the Deed of Trust and Note are split there is NO way to get them back together.

11. Chase Home Finance and Washington Mutual Bank, F.A. is not in possession of the original promissory note

12. Chase Home Finance and Washington Mutual Bank, F.A. lacked standing

## VIOLATIONS OF THE FTC ACT

Section 5(a) of the FTC Act, 15 U.S.C 45(a), prohibits "unfair or deceptive acts or Practices in or affecting commerce."

Misrepresentations or deceptive omissions of material fact constitute deceptive acts and practices prohibited by Section 5(a) of the FTC Act. Acts or practices are unfair under Section 5 of the FTC Act if they cause or are likely to cause substantial injury to consumers that consumers reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition. 15 U.S.C 45(n)

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

In 1977, Congress passed the FDCPA, 15 U.S.C. 1692 *et seq.,* which became Effective in 1978, and has been in force since that date. Section 814 of the FDCPA, 15 U.S.C. 1692*l,* specifically empowers the Commission to enforce the FDCPA. Under its provisions, for purposes of the exercise by the Commission of its functions and powers under the FTC ACT, a violation of the FDCPA is Deemed an unfair or deceptive practice in violation of the FTC Act. Further, the Commission is authorized to use all of its functions and powers under the FTC Act to enforce compliance with the FDCPA by any person, irrespective of whether that person is engaged in commerce or meets any other jurisdictional tests set by the FTC Act. The authority of the Commission in this regard includes the power to enforce the provision of the FDCPA in the same manner as if the violations of the FDCPA were violations of a Federal Trade Commission trade regulation rule.

## Count IV: Harassment or Abuse

1. Plaintiff incorporates by reference all the foregoing paragraphs.

2. In with the collection of debts that were in default when obtained by obtained by Chase Home Finance and Washington Mutual Bank, F.A., Chase Home Finance and Washington Mutual Bank, F.A. have used conduct the natural consequence of which is to harass, oppress, or abuse any person, in violation of Section 806 of the FDCPA, 15 U.S.C 1692, including but not limited to:
   a. Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse or harass any person at the called number, in violation of Section 806(5) of the FDCPA, 15 U.S.C. 1692d(5) and
   b. The placement of telephone calls without meaningful disclosure of the caller's identity in violation of Section 806(6) of the FDCPA, 15 U.S.C. 1692d (6).

3. Pursuant to Section 814 of the FDCPA, 15 U.S.C 1692*l*, the acts and practices alleged in paragraph 1 also constitute unfair or deceptive acts or practices in violation of the FTC Act.

4. **MERS is not registered to do business in the State of Georgia**

5. Chase Home Finance and Washington Mutual Bank, F.A. are not in possession of the original promissory note.

6. The Note and Deed of Trust both require payment to be made to the "Lender" Not MERS.

7. Promissory Note does note make reference to MERS.

8. Deed of Trust does not name Chase Home Finance and Washington Mutual Bank, F.A. as beneficiary but instead names MERS solely as nominee.

9. The Note is split from the instrument there is NO enforcement mechanism available under the Deed of Trust. Once the Deed of Trust and Note are split there is NO way to get them back together.

## Count V: False or Misleading Representations

1. Plaintiff incorporates by reference all the foregoing paragraphs.

2. In connection with the collection of debts that were in default when obtained by Chase Home Finance and Washington Mutual Bank, F.A., Chase Home Finance and Washington Mutual Bank, F.A. have used false, deceptive, or misleading

representations or means, in violation of Section 807 of the FDCPA, 15 U.S.C. 1692e, including but not limited to:

    a. Falsely representing the character, amount, or legal status of a debt, or any services rendered or compensation which may be lawfully received by a debt collector for collection of a debt, in violation of Sections 807(2)(A) and (B) of the FDCPA, 15 U.S.C. 1692e(2)(A) and (B);

    b. Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a dispute debt is disputed, in violation of Section 807(8) of the FDCPA, 15 U.S.C. 1692e(8);

    c. Using false representations or deceptive means to collect or attempt to collect a debt or to obtain information concerning a consumer, in violation of Section 807(10) of the FDCPA, 15 U.S.C. 1692e(10) and

    d. Failing to disclose in the initial written communication with Tracy R. Mitchell and, in addition, if the initial communication with Tracy R. Mitchell is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, in violation of Section 807(11) of the FDCPA, 15 U.S.C. 1692e(11).

3. Pursuant to Section 814 of the FDCPA, 15 U.S.C. 1692*l*, the acts and practices alleged in paragraph 1 also constitute unfair or deceptive acts or practices in violation of the FTC Act.

4. **MERS is not registered to do business in the State of Georgia**

5. **The loan was assigned to Mortgage Electronic Registration System (MERS). MERS does not hold any interest in the loan.**

6    When MERS assigned the Note to Chase Home Finance and Washington Mutual Bank, F.A. the Note became unsecured and Deed of Trust became worthless.

8. The use of MERS to make ownership of the Note and mortgage made the Deed of Trust unenforceable.

9. Chase Home Finance and Washington Mutual Bank, F.A. have no interest in the property.

10. MERS is name as nominee as beneficiary. MERS is not name on the Note. If the note is split from the security instrument, there is NO enforcement mechanism available under the Deed of Trust. Once the Deed of Trust and Note are split there is NO way to get them back together.

11. Chase Home Finance and Washington Mutual Bank, F.A. are not possession of the original promissory note.

**12.** Chase Home Finance and Washington Mutual Bank, F.A. lacked standing

## Count VI: Unfair Practices

1.  Plaintiff incorporates by reference all the foregoing paragraph.

2.  In connection with the collection of debts that were in default when obtained by Chase Home Finance and Washington Mutual Bank, F.A., Chase Home Finance and Washington Mutual Bank, F.A. have used unfair or unconscionable means to collect or attempt to collect a debt, including but not limited to collecting amounts (including any interest, fee, charge, or expense incidental to the principal obligation) not authorized by the agreement creating the debt or permitted by law, in violation of Section 808(1) of the FDCPA, 15 U.S.C. 1692f(1),

3.  Pursuant to Section 814 of the FDCPA, 15 U.S.C. 1692*l*, the acts and practices alleged in paragraph in 2 also constitute unfair or deceptive acts or practices in violation of the FTC Act.

4.  **MERS is not registered to do business in the State of Georgia**

5.  **The loan was assigned to Mortgage Electronic Registration System (MERS) MERS does not hold any interest in the loan.**

6.  When MERS assigned the Note to Chase Home Finance and Washington Mutual Bank, F.A., the Note became unsecured and Deed of Trust became worthless.

7.  The use of MERS to make ownership of the Note and mortgage made the Deed of Trust unenforceable.

8.  Chase Home Finance and Washington Mutual Bank, F.A. has no interest in the property.

9.  MERS is name as nominee as beneficiary. MERS is not name on the Note. If the note is split from the security instrument, there is NO enforcement mechanism available under the Deed of Trust. Once the Deed of Trust and Note are split there is NO way to get them back together.

10. Chase Home Finance and Washington Mutual Bank, F.A. are not in possession of the original promissory note.

11. The Note and Deed of Trust both require payment to be made to be the "Lender" note MERS

12. Deed of Trust does not name Chase Home Finance and Washington Mutual Bank, F.A. as beneficiary but instead names MERS as solely as nominee.

13. The Note is split from the security instrument there is NO enforcement mechanism available under the Deed of Trust. Once the Deed of Trust and Note are split there is NO way to get them back together.

14. Chase Home Finance and Washington Mutual Bank, F.A. lacked standing.

## **Count VI: Unfair Practices**

1. Plaintiff incorporates by reference all the foregoing paragraphs.

2. In connection with the collection of debts that were in default when obtained by Chase Home Finance and Washington Mutual Bank, F.A., Chase Home Finance and Washington Mutual Bank, F.A. have used unfair or unconscionable means to collect or attempt to collect a debt, including but limited to collecting amounts (including any interest, fees, charges, or expenses incidental to the principal obligation) not authorized by the agreement creating the debt or permitting by law, in violation of Section 808(1) of the FDCPA, 15 U.S.C. 1692f(1).

3. Pursuant to Section 814 of the FDCPA, 15 U.S.C. 1692*l*, the acts and practices alleged in paragraph 45 also constitute unfair or deceptive acts or practices in violation of the FTC Act.

4. MERS is not registered to do business in the State of Georgia

5. The loan was assigned to Mortgage Electronic Registration System (MERS) MERS does not hold any interest in the loan.

6. When MERS assigned the Note to Chase Home Finance and Washington Mutual Bank, F.A., the Note became unsecured and Deed of Trust became worthless.

7. The use of MERS to make ownership of the Note and mortgage made the Deed of Trust unenforceable.

8. Chase Home Finance and Washington Mutual Bank, F.A. have no interest in the property.

9. MERS is name as nominee as beneficiary. MERS is not name on the Note. If the note is split from the security instrument, there is NO enforcement mechanism available under the Deed of Trust. Once the Deed of Trust and Note are split there is NO way to get them back together.

10. Chase Home Finance and Washington Mutual Bank, F.A. are not possession of the original promissory.

11. The Note is split from the security instrument there is NO enforcement mechanism available under the Deed of Trust. Once the Deed of Trust and Note are split there is NO way to get them back together

12. The Note and Deed of Trust both require payment to be made to "Lender" Not MERS.

13. Promissory Note does not make reference to MERS.

14. Deed of Trust does not name Chase Home Finance and Washington Mutual Bank, F.A. as the beneficiary but instead MERS is the grantee under the Security Instrument

15. Chase Home Finance and Washington Mutual Bank, F.A. lacked standing.

### **Count VII: Validation of Debts**

1. Plaintiff incorporates by reference all the foregoing paragraphs.

2. In connection with the collection of debts that were in default when obtained by Chase Home Finance and Washington Mutual Bank, F.A., Chase Home Finance and Washington Mutual Bank, F.A. have failed to notify consumers of their rights to dispute and obtain verification of their debts and to obtain the name of the original creditor, either in the initial communication with Tracy R. Mitchell by Chase Home Finance and Washington Mutual Bank, F.A., or within five days thereafter, in violation of Section 809(a) of the FDCPA, 15 U.S.C. 1692g(a).

3. Pursuant to Section 814 of the FDCPA, 15 U.S.C. 1692l, the acts and practices alleged in paragraph 2 also constitute unfair or deceptive acts or practices in violation of the FTC Act.

4. This loan was assigned to Mortgage Electronic Registration Systems (MERS) MERS does not hold any interest in the loan.

5. MERS is not registered to do business in the state of Georgia.

6. When MERS assigned the Note to Chase Home Finance and Washington Mutual Bank, F.A., the Note became unsecured and Deed of Trust became worthless.

7. The use of MERS to make ownership of the Note and mortgage made the Deed of Trust unenforceable.

8. Chase Home Finance and Washington Mutual Bank, F.A. have no interest in the property.

9. MERS is name as nominee as beneficiary. MERS is not name on the Note. If the note is split from the security instrument, there is NO enforcement mechanism

available under the Deed of Trust.  Once the Deed of Trust and Note are split
there is NO way to get them back together.

10. Chase Home Finance and Washington Mutual Bank, F.A. are not possession of
the original promissory note

11. The Note and Deed of Trust both require payment to be made to the "Lender"
Not MERS.

12. Promissory Note does not make reference to MERS

13. Deed of Trust does not name Chase Home Finance and Washington Mutual
Bank, F.A. as the beneficiary but instead MERS is the grantee under the Security
Instrument

14. The Note is split from the security instrument there is No enforcement
mechanism available under the Deed of Trust.  Once the Deed of Trust and Note
are split there is no way to get them back together.

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

In 1970, Congress passed the FCRA, 15 U.S.C. 1681 *et seq.,* which became

Effective in 1971, and has been in force since that date.  Section 621(a) of the FCRA,

15 U.S.C. 1681s(a), specifically empowers the Commission to enforce the FCRA.

Under the provisions, for the purpose of the exercise by the Commission of its

Functions and powers under the FTC ACT, a violation of the FCRA is deemed an

unfair or deceptive practice in violation of the FTC Act to enforce compliance with

The FCRA by any person, irrespective of whether that person is engaged in

Commerce or meets any other jurisdictional tests set by the FTC Act.

### Count VIII: Failure to Report Disputes

1. Plaintiff incorporates by reference all the foregoing paragraphs.

2. In which Tracy R. Mitchell has informed Chase Home Finance and Washington
Mutual Bank, F.A. that they dispute the completeness or accuracy of information
furnished by Chase Home Finance and Washington Mutual Bank, F.A. to a
consumer reporting agency, Chase Home Finance and Washington Mutual Bank,

F.A. have not reported the disputes to any or all of the consumer reporting agencies to which they furnish or have furnished the information.

3.    The acts and practices alleged in paragraph 2 constitute violations of Section 623(a)(3) of the FCRS, 15 U.S.C. 1681s-2(a)(3).

4.    Pursuant to Section 621(a) of the FCRS, 15 U.S.C. 1681s(a)(1), the acts and practices alleged in paragraph 2 also constitute unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. 45(a)

## VIOLATIONS OF THE TILA'S REGULATION Z

In 1968, Congress passed the TILA, 15 U.S.C. 1601 *et seq.*, which became

Effective in 1969, and has been in force since that date. Section 108(c) of the TILA,

15 U.S.C. 1607(c), specifically empowers the Commission to enforce the TILA.

Under its provisions, for purpose of the exercise by the Commission of its functions

and powers under the FTC Act, a violation of any requirement imposed under the

TILA shall be deemed a violation of a requirement imposed under the FTC Act.

Further, the Commission is authorized to used all of its functions and powers under

The FTC Act to enforce compliance with TILA by any person, irrespective of

whether that person is engaged in commerce or meets any other jurisdictional tests

Set by FTC Act.

### Count IX: Failure to Provide Required Disclosures

1.    Plaintiff incorporates by reference all the foregoing paragraphs.

2.    In the course and conduct of loan servicing and collection, Chase Home Finance and Washington Mutual Bank, F.A. have included the cost of a modification fee in the unpaid principal balance of modified loans, without providing required disclosures, in violation of Section 226.18 and 226.20 of Regulation Z, 12 C.F.R. 226.18 and 226.20. Regulation Z, 12 C.F.R. 226, is issued by the Board of Governors of the Federal Reserve System and is the implementing regulation for the TILA.

3. Pursuant to Section 108(c) of the TILA, 15 U.S.C 1607(c), every violation of the TILA and Regulation Z constitutes a violation of the FTC Act.

4. MERS is not registered to do business in the State of Georgia

5. The loan was assigned to Mortgage Electronic Registration System (MERS) MERS does not hold any interest in the loan.

6. When MERS assigned the Note to Chase Home Finance and Washington Mutual Bank, F.A., the Note became unsecured and Deed of Trust became worthless.

7. The use of MERS to make ownership of the Note and mortgage made the Deed of Trust unenforceable.

8. Chase Home Finance and Washington Mutual Bank, F.A. has no interest in the property.

9. MERS is name as nominee as beneficiary. MERS is not name on the Note. If the note is split from the security instrument, there is NO enforcement mechanism available under the Deed of Trust. Once the Deed of Trust and Note are split there is NO way to get them back together.

10. Chase Home Finance and Washington Mutual Bank, F.A. are not possession of original promissory note.

11. The Note and Deed of Trust both require payment to be made to the "Lender" Not MERS.

12. Deed of Trust does not name Chase Home Finance and Washington Mutual Bank, F.A. as beneficiary but instead MERS is the grantee under the Security Instrument

13. The Note is split from the security instrument there is NO enforcement mechanism available under the Deed of Trust. Once the Deed of Trust and Note are split there is NO way to get them back together.

14. Chase Home Finance and Washington Mutual Bank, F.A. lacked standing

## Count X: Misrepresentation of Amount Owe

1. In the course and conduct of their loan servicing and collection, Chase Home Finance and Washington Mutual Bank, F.A. have represented, directly or indirectly, expressly or by implication, that Tracy R. Mitchell is obligated to pay the amounts specified in Chase Home Finance and Washington Mutual Bank, F.A. communications for default related services such as property inspections, title report, and foreclosure trustee services.

2 In truth and fact, Tracy R. Mitchell is not obligated to pay the amount that have been specified in Chase Home Finance and Washington Mutual Bank, F.A. communications for default related services such as property inspection, title reports and foreclosure trustee services. Chase Home Finance and Washington Mutual Bank, F.A. include in the amounts they represent as owed fees that have been marked up beyond the actual cost of the services and or fees that are for performance of unnecessary or unreasonable services, in violation of the mortgage contract.

3 Therefore, Chase Home Finance and Washington Mutual Bank, F.A. representation as set forth in paragraph 1 of this Complaint are false or misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C 45(a)

## Count XI: Breach of Contract

1. Plaintiff incorporates by reference all the foregoing paragraphs.

2. In the course of conduct, Chase Home Finance and Washington Mutual Bank, F.A. owed a duty to Tracy R. Mitchell to perform and Chase Home Finance and Washington Mutual Bank, F.A. failed to perform its duties and obligations.

3. Tracy R. Mitchell did rely on Chase Home Finance and Washington Mutual Bank, F.A. statements and actions to their detriment and performed their duties under the Contract rightfully expecting reciprocal performance.

4. Chase Home Finance and Washington Mutual Bank, F.A. failed to provide Escrow Analysis.

5. MERS is not registered to do business in the State of Georgia

6. This loan was assigned to Mortgage Electronic Registration System (MERS) MERS does not have any interest in this loan

7. MERS is not registered to do business in the state of Georgia.

43

9. When MERS assigned the Note to Chase Home Finance and Washington Mutual Bank, F.A., the Note became unsecured and Deed of Trust became worthless.

9   The use of MERS to make ownership of the Note and mortgage made the Deed of Trust unenforceable.

10. Chase Home Finance and Washington Mutual Bank, F.A. have no interest in the property.

11. MERS is name as nominee as beneficiary. MERS is not name on the Note. If the note is split from the security instrument, there is NO enforcement mechanism available under the Deed of Trust. Once the Deed of Trust and Note are split there is NO way to get them back together.

12. Chase Home Finance and Washington Mutual Bank, F.A. lacked standing

## COUNT XII: VOID OR VOIDABLE CONTRACT

1. Chase Home Finance and Washington Mutual Bank, F.A. are not in possession of the original promissory note.

2. The Note and Deed of Trust both require payment to be made to the "Lender" Not MERS

3. Promissory Note does not make reference to MERS

4. Deed of Trust does not name Chase Home Finance and Washington Mutual Bank, F.A. as the beneficiary but instead names MERS is grantee under the Security Instrument

5. The Note is split from the security instrument there is NO enforcement mechanism available under the Deed of Trust. Once the Deed of Trust and Note are split there is NO way to get them back together.

6. Chase Home Finance and Washington Mutual Bank, F.A. lacked standing

7. MERS is not registered to do business in the State of Georgia

## COUNT XIII: FRAUD

8. Chase Home Finance and Washington Mutual Bank, F.A. are not in possession of the original promissory note.

9. The Note and Deed of Trust both require payment to be made to the "Lender" Not MERS

10. Promissory Note does not make reference to MERS

11. Deed of Trust does not name Chase Home Finance and Washington Mutual Bank, F.A. as the beneficiary but instead names MERS is the grantee under the Security Instrument

12. The Note is split from the security instrument there is NO enforcement mechanism available under the Deed of Trust. Once the Deed of Trust and Note are split there is NO way to get them back together.

13. Chase Home Finance and Washington Mutual Bank, F.A. lacked standing.

14. MERS is not registered to do business in the State of Georgia

## COUNT XIV: VIOLATION OF UNFAIR AND DECEPTIVE TRADE PRACTICES ACT SECTION 501.201 ET SEQ., F.S., (FDUTPA)

15. Chase Home Finance and Washington Mutual Bank, F.A. are not in possession of the original promissory note.

16. The Note and Deed of Trust both require payment to be made to the "Lender" Not MERS

17. Promissory Note does not make reference to MERS

18. Deed of Trust does not name Chase Home Finance and Washington Mutual Bank, F.A. as the beneficiary but instead names MERS is the grantee under the Security Instrument

19. The Note is split from the security instrument there is NO enforcement mechanism available under the Deed of Trust. Once the Deed of Trust and Note are split there is NO way to get them back together.

20 Chase Home Finance and Washington Mutual Bank, F.A. lacked standing

21. MERS is not registered to do business in the State of Georgia

45

## COUNT XV: FRAUD IN THE INDUCEMENT

22. Chase Home Finance and Washington Mutual Bank, F.A. are not in possession of the original promissory note.

23. The Note and Deed of Trust both require payment to be made to the "Lender" Not MERS

24. Promissory Note does not make reference to MERS

25. Deed of Trust does not name Chase Home Finance and Washington Mutual Bank, F.A. as the beneficiary but instead names MERS is the grantee under the Security Instrument

26. The Note is split from the security instrument there is NO enforcement mechanism available under the Deed of Trust. Once the Deed of Trust and Note are split there is NO way to get them back together.

27. Chase Home Finance and Washington Mutual Bank, F.A. lacks standing

## COUNT XVI: CIVIL CONSPIRACY

28 Chase Home Finance and Washington Mutual Bank, F.A. are not in possession of the original promissory note.

29. The Note and Deed of Trust both require payment to be made to the "Lender" Not MERS

30. Promissory Note does not make reference to MERS

31. Deed of Trust does not name Chase Home Finance and Washington Mutual Bank, F.A. as the beneficiary but instead names MERS solely as nominee

32. The Note is split from the security instrument there is NO enforcement mechanism available under the Deed of Trust. Once the Deed of Trust and Note are split there is NO way to get them back together.

33. Chase Home Finance and Washington Mutual Bank, F.A. lacked standing

## COMMERCE

At all times material to this Complaint, Chase Home Finance and Washington Mutual Bank, F.A. have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in

## JURIDICTION AND VENUE

This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. 45(a), 53(b), 1607(c), 1691c(c) and 1681 s (a) and 28 U.S.C 1331, 1337(a) and 1345. Venue Is proper in the United States District Court for the Northern District of Georgia Under 28 U.S.C 139(b) and (c) and 15 U.S.C 53(b).

## PARTIES

The Plaintiff, Tracy R. Mitchell is an ordinary citizen, trying to accomplish the American dream of home ownership.

The Plaintiff reside 446 Glenwood Place SE, Atlanta Georgia 30316.  At all times relevant to this Complaint, defendants has operated a business in the United States.

**Washington Mutual Bank, F.A. 2801 Gateway Drive #150, Irwin Texas 75081**

**Mortgage Electronic Registration System Inc, 2711 Centerville Road Suite 400 Wilmington DE 10808.**

**Shapiro & Swertfeger, LLP 2872 Wockcock Blvd Suite 100, Atlanta Georgia 30341**

**Federal National Mortgage Association**

**EverHome Mortgage Company  8100 Nations Way, Jacksonville Florida 32256**

## INJURY

I Tracy R. Mitchell have suffered, and will continue to suffer, substantial injury as a result of the defendant's violations of the FTC Act, FDCPA, FCRA and the TILA Regulation Z.  Absent injunctive relief by this Court, the Defendants are likely to continue to injure the Plaintiff and harm the public interest

## STATEMENT OF CLAIM

The Plaintiff has been violated by Chase Home Finance and Washington Mutual Bank deliberate failure to give them all the necessary disclosures and by excessive fee charged during the closing and Servicing of this loan.

See IN RE HAWNG, 396 B.R.757 (Bankr. C. D. Cal. 2008)

Chase Home Finance and Washington Mutual Bank failure to give all material disclosures to Tracy R. Mitchell has cause her harm in that she could not make informed decisions.  See TILA 15 U.S.C. 1601 Regulation z.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court, pursuant to section 13(b) of the FTC Act, 15 U.S.C. 53(b), section 814(a) of the FDCPA, 15 U.S.C. 1692*l*(a), section 621(a) of the FCRA, 15 U.S.C. 1681s(a), section 108(c) of the TILA, 15 U.S.C 1607(c), 11 U.S.C. 362(a) and pursuant to its own equitable powers:

   (a)  Enter judgment against defendants and in favor of Plaintiff for Each
        Violation charged in the complaints.

   (b)  Permanently enjoin and restrain defendants from violating TILA,  Regulation Z
        And RESPA in any way where Tracy R. Mitchell is concerned.

48

(c) Find the defendants jointly and severally liable for redress to the Plaintiff.

(d) Ceases and desists any and all further duties / actions of said appointments(s), or assignments(s) including debt collections and any foreclosure actions.

(e) Enter a permanent injunction to prevent future violations of the FTC Act, the FDCPA, the FCRA, and the TILA's Regulation Z.

(f) Award such relief as the Court finds necessary to redress injury to consumers Resulting from defendants' violations of the FTC Act, FDCPA, FCRA, Georgia Deceptive Trade Practices Law (UDTPA), RESPA and the TILA's Regulation Z, including but not limited to, rescission or reformation of Contract, restitution, the refund of monies paid, and disgorgement of ill-gotten Gains; and

(g) Award plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

(h) Remove any and all negative reporting to the Plaintiff consumer credit reporting.

(i) Award the Plaintiff special damages of $214,000.00

(j) Plaintiff also seeks statutory damages and equitable damage (as the Court Deems Fair )

(k) And that three times amount set by TILA for violations.

(l) Award Plaintiff its cost

To bring this action, as well as such other additional equitable relief as the Court Determines to be just and proper.

If it becomes necessary to prosecute this action, that this case is tried by a jury of 12 Persons.

## THIS COURT'S POWER TO GRANT RELIEF

1.  Section 13(b) of the FTC Act, 15 U.S.C. 53(b) empowers this Court to grant injunctive and other ancillary relief, including consumer redress, disgorgement of ill gotten monies and restitution, to prevent and remedy any violations of any provision of law enforced by the Commission.

2.  This Court, in the exercise of its equitable jurisdiction, may award other ancillary relief, including rescission or reformation of contracts, refund of monies paid, prevent and remedy any violation of any provision of law enforced by the FTC against the defendants' law violations.

## ACCOUNT ACCOUNTING & SERVICING SYSTEMS

1. Identify for me account accounting and servicing system used by you and any sub-serviciers or previous servicers from the inception of this account to the present date, so that these experts can decipher the data provided.
2. For each account accounting and servicing from the inception of this account to the present date; please provide the name and address of the company or parties that designed and sold the system.
3. For each account accounting and servicing system used by you and any sub servicers or previous servicers from the inception of this account to the present date, please provide the complete transaction code list for each systems so that we and others can adequately audit this account.

## DEBITS & CREDITS

1. In a spreadsheet form or in letter form in column format, please detail for us each and every credit on this account and the date such credit was posted to this account, as well as the date any credit was received.
2. In a spreadsheet form or in letter form in a column format, please detail for us each and every debit on this account and the date debit was posted to this account as well as the date any debit was received.
3. For each debit and credit listed, please provide me with the definition for each corresponding transaction code used.
4. For each transaction code, please provide us with the master transaction code last used by you or previous servicers

## LATE FEES

For the purpose of my questions below dealing with late fees, please consider the terms late fees and late charges to be one in the same.

1. Have you reported the collection of late fees on this account as interest in any statement to me or to the IRS? Yes or No
2. Has any previous servicers or sub-servicers of this loan reported the collection of late fees on this account as interest in any statement to me or to the IRS? Yes or No
3. Do you consider the payment of late fees as liquidated damages to you for not receiving payment on time? Yes or No
4. Are late fees considered interest? Yes or No

5. Please detail for me in writing what expenses and damages you incurred for any payment that was made late.

6. Were any of these expenses or damages charged or assessed to this account in any other way? Yes or No

7. If yes, please describe what expenses or charges were charged or assessed to this account.

8. Describe for me in writing what expenses you or other undertook due to any payment made.

9. Describe for me in writing what damages you or others undertook due to any payment made.

10. Identify for me in writing the provision, paragraph, section or sentence of any note, or any agreement I signed that authorized the assessment or collection of late fees?

11. Detail and list for me in writing each separate late fee assessed to this account and for which corresponding payment period or month such late fee was assessed from the inception of this account to present date.

12. Detail and list for me in writing each separate late fee collected from this account and for which corresponding payment period or month such late fee was collected from the inception of this account to the present date.

13. Detail and list for me in writing any adjustments in late fees assessed and on what date such adjustments were made and the reason for such adjustments.

14. Has interest been charged on any late fees assessed or charged to this account? Yes or No

The accounting and servicing of the agreement and my need for understanding and
Clarification of various sales, transfers, funding source, legal and beneficial ownership,
Charges, credits, debits, transactions, reversals, actions, payments, inception of my loan
To the present date.

To this date, the information, and documents I, Tracy R. Mitchell have sent, and the
many conversations with your customer representatives/agents has been unproductive
and have not answered many or any of my questions.

It has come to my attention that your company may have been accused of engaging in
one or more predatory servicing or lending and servicing schemes. As a customer, I am
extremely troubled to know about such practice by anyone; let alone Chase Home
Finance and Washington Mutual Bank, F.A., financing company or anyone who has any
interest in this matter. I am concerned that such abuse are targeting the uneducated and
uninformed/unaware consumer and disadvantaged, poor and minority Americans.

Regardless, I am most concerned. This situation worries me that potential fraudulent
and deceptive practices by unscrupulous brokers; sales and transfers of credit and or
servicing rights; deceptive and fraudulent accounting tricks and practices may have also
negatively affected any credit rating, loan account and or the debt or payments that we
are currently, or may be legally obligated to.

At this time, I hereby demand absolute first hand evidence from you of the original
BLUE INK signature of the note that verifies the holder in due course of this alleged debt
and or security regarding my account.

In the case, that you do not supply me with the very security it will be a positive confirmation on your part that you never really created and owned of the note. I hereby demand that a chain of transfer from you to wherever the security is now being promptly sent to me as well. Absent of the actual evidence of the security, I have no choice, but to dispute the validity of your lawful ownership, funding, entitlement right and the current debt you allege I owe. By debt I am is referring to the principal balance you claim we owe; the calculated monthly payment and any fees claimed to be owed by you or any trust or entity you may service or sub-service.

To independently validate this debt, I request that you to conduct a complete exam, audit, review and accounting of this from its inception through the present date. Upon receipt of this letter, please refrain from reporting any negative credit information past and current.

I also request that you conduct this investigation an audit of this account by a CPA Certified Public Accountant (neutral party), since its origination to validate the debt you currently claim that I owe. I would like you to validate this debt so that it is accurate to the penny.

Please do not rely on previous servicers or records, assurances or indemnity Agreements and refuse to conduct a full audit and investigation of this account. I understand that potential abuses by you or previous servicers could have deceptively, wrongfully, unlawfully and or illegally:

1) Increased the principal balance that I owe.
2) Decreased the proper amount applied and attributed toward principle on this account.
3) Assessed, charged and or collected fees, expense and miscellaneous charges I am legally obligated to pay under this DEED OF TRUST / SECURITY AGREEMENT/NOTE.

It is extremely urgent that you ensure that we have not been a victim of such predatory servicing or lending practices.

To ensure this, I authorize a thorough review, examination, accounting and audit of my account by a neutral auditing, CPA, and predatory servicing or lending expert. This exam and audit will review this account file from the date of the initial contact, application and the origination of this account to the present date.

In order to conduct the examination and audit of this loan, we need to have full and immediate disclosure including copies of all pertinent information regarding this loan. The documents, requests and answers to my questions are needed by me and others to ensure that this loan:

1. Was originated in lawful compliance with all federal and state laws and regulations including, but not limited to Title 62 of the Revised Statues of the Fair Debt Collection Act, and other laws such as Real Estate Settlement Procedure Act 12 U.S.C 2601 et. Seq.: That any and all sales transfer of this account or monetary instrument, were conducted in accordance with proper laws and were a lawful sale with **COMPLETE** disclosure to all parties with an interest. This request requires signatures of both parties that constitute a loan. As you know, it takes two or more parties' signatures, meeting of the minds, and exchange of valuable consideration to create a valid contract.

That, the claimed holder in due course of the monetary instrument/title/asset/note is holding such note in compliance with statues, State and Federal laws and is entitled to the benefits of payments.

That, all good faith and reasonable disclosure of transfers, sales, Power of Attorney, monetary instrument ownership, entitlements, full disclosure of actual funding source, terms, costs, commissions, rebates, kickbacks, fees, etc, were and still are properly disclosed to me.

That, each servicers and or sub servicers of this loan and or agreement has serviced this loan and or agreement in accordance with the statue, law, and the terms of agreement, monetary instrument and or title.

That this agreement and or loan account has properly been credited, debited, adjusted, amortized and charged correctly; that the principal and fees have been properly calculated and applied to this loan.

That any principal balance has been properly calculated, amortized and accounted for; that no charges, fees or expenses, not obligated by us in any agreement, have been charged, assessed or collected from this account.

In order to validate this debt and audit this account, we need copies of pertinent documents to be provided to us. I need answers, certified in writing, under penalty of perjury to various servicing questions describe below.

For each record kept on computer or any other electronic file or format, please provide a paper copy of all information in each field or record in each computer system, program or database used by you that contain any information on this account or my name.

As such please send me and my Notary Fiduciary at 446 Glenwood Place SE, Atlanta Georgia 30316 copies of the documents requested below as soon as possible.

Provide copies of:

1. Any and all certified or un-certified securities, front and back, used for the funding of our account.
2. Any and all "Pool Agreement(s) between **Washington Mutual Bank, F.A., Chase Home Finance, Federal National Mortgage Association, Mortgage Electronic Registration System (MERS)** and any government sponsored entity, hereinafter (GSE).
3. Any and all "Deposit Agreement(s) regarding any "Pool Agreement" between **Washington Mutual Bank, F.A., Chase Home Finance, Federal National Mortgage Association, Mortgage Electronic Registration System (MERS)** and any GSE.
4. Any and all "Servicing Agreement(s) between **Washington Mutual Bank, F.A., Chase Home Finance, Federal National Mortgage Association, Mortgage Electronic Registration System (MERS)** and any GSE.
5. Any and all "Custodial Agreement(s) between **Washington Mutual Bank, F.A., Chase Home Finance, Federal National Mortgage Association, Mortgage Electronic Registration System (MERS)** and any GSE
6. Any and all "Master Purchasing Agreement(s) between **Washington Mutual Bank, F.A., Chase Home Finance, Federal National Mortgage Association, Mortgage Electronic Registration System (MERS)** and any GSE.
7. DEED OF TRUST / SECURITY AGREEMENT, **Washington Mutual Bank, F.A., Chase Home Finance, Federal National Mortgage Association, Mortgage Electronic Registration System (MERS)** and any GSE.
8. Any and all "Commitment to Guarantee" agreement(s) between **Washington Mutual Bank, F.A., Chase Home Finance, Federal National Mortgage Association, Mortgage Electronic Registration System (MERS)** and any GSE.
9. Any and all "Release of Document" Agreement(s) between **Washington Mutual Bank, F.A., Chase Home Finance, Federal National Mortgage Association, Mortgage Electronic Registration System (MERS)** and any GSE.
10. Any and all "Master Agreement(a) for Servicers Principal and Interest Custodial Account" between **Washington Mutual Bank, F.A., Chase Home Finance, Federal National Mortgage Association, Mortgage Electronic Registration System (MERS)** and any GSE.
11. Any and all "Servicers Escrow Custodial Account" between **Washington Mutual Bank, F.A., Chase Home Finance, Federal National Mortgage Association, Mortgage Electronic Registration System (MERS)** and any GSE
12. Any and all "Release of Interest" agreement(s) between **Washington Mutual Bank, F.A., Chase Home Finance, Federal National Mortgage Association, Mortgage Electronic Registration System (MERS)** and any GSE.
13. Please send to the Purchaser a copy of any and all document(s) establishing any Grantor for this Title and Note.
14. All assignments, transfers, allowances, or other documents evidencing a transfer, sale or assignment of this loan, monetary instrument or other documents that secure payment by me to this obligation in this account from the inception of this account to the present date.

15. The front and back of each and every canceled check, money order, draft, debit or credit notice issued to any Servicers of this account for payment of any monthly payment, other payment, late charge, fee or expense on this account

16. The front and back of each and every canceled check, draft, or debit notice issued for payment of closing costs, fees and expenses listed on any and all disclosure statement(s) including, but not limited to appraisal fees, etc.

17. Front and back copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by others or me on this account.

18. **All letters, statements and documents sent to us by Washington Mutual Bank, F.A., Chase Home Finance, Federal National Mortgage Association and Mortgage Electronic Registration System (MERS).**

19. All letters, statements and documents sent to me by your agents, attorneys and or representatives of your company.

20. All agreements, contracts and understandings with vendors that have been paid for any charge on this account from the inception of this account to the present date

21. All account servicing records, payment payoffs, payoff calculation, payment records, transaction history, account history, accounting records, ledgers and documents that relate to the accounting of this account from its inception of this account until present date.

22. All account servicing transaction records, ledgers, registers and similar items detailing how this account has been serviced from the date of inception of this account until present date.

23. Who loaned the money for this loan, or was it funded by my own pass-through account known as my Social Security Number (Federal Reserve Account).

## VERIFICATION

Personally appeared before me, undersigned attested officer, I Tracy R. Mitchell states

under oath that the facts contained in the Foregoing Complaint are true and correct to the

best of my knowledge.

**Tracy R. Mitchell**

446 Glenwood PL SE, Atlanta, GA 30316
**Mailing Address**

678-362·1219
**Phone**

**Sworn To and Subscribed Before Me**

This __5__ day of __Oct__ 2010

**Notary Public**

**My Commission Expires**
3|13|2

59

Papers Considered:

1. Notice of Motion to Dismiss date November 17, 2009; Affirmation of Jason J. Kovacas, Esq. dated November 17, 2009
2. Opposition of David P. Case, Esq. dated December 7, 2009
3. Affirmation of Affirmation of Jason J. Kovacs, Esq. dated December 14, 2009


State Of New York Supreme Court

OneWest Bank, FSB

vs

Scott Cullen; Donna Greenfield; Indymac Bank F.S.B.;


COUNTRYWIDE HOME LOANS, INC
A corporation and

BAC HOME LOANS SERVICING, LP
A Limited Partnership

Defendants

vs

Federal Trade Commission


Fifth Judicial District Court In and For

Washington County, State Of Utah)